MAUD OHME, APPELLEE, V. FRANK THOMAS ET AL., APPEL-
LANTS.

279 N. W. 480

FILED MAY 6, 1938. No. 30176.

*Auburn H. Atkins,* for appellants.

*Morrow & Morrow, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER
and MESSMORE, JJ.

EBERLY, J.

This is an action to quiet title to a strip of land situated
between the adjoining farms of plaintiff, Maud Ohme, and
defendant Frank Thomas. The land in controversy is a
tract twenty-nine feet wide on the east end and eight and
one-half feet wide on the west end, and it extends across
the quarter-section wherein situated. In September, 1907,
the husband and grantor of plaintiff, Maud Ohme, entered
a United States government homestead on the north half
of the southeast quarter of section 30, township 24 north,
range 56, west of the 6th P. M. In October or November

following, the defendant Frank Thomas entered a homestead on the south half of the southeast quarter of said section 30 aforesaid. In 1908 both parties took up their residences on their respective homesteads. Frank Thomas received his patent in 1915, and has remained in continuous possession of his homestead since 1908. In 1931 Otto Ohme, who had also become the patentee of his land, conveyed his homestead to his wife, plaintiff herein, and the possession of their homestead, including the strip of land in dispute, has likewise been continuous in this husband and wife from the date of the first occupation of their homestead. After an extended hearing upon evidence in part conflicting, and visits to the *locus in quo,* a decree was entered substantially as prayed by plaintiff, quieting title to the disputed strip of land in her, and awarding other relief consistent therewith. From this decree the defendants appeal.

Four errors are assigned in appellants' brief, which, in view of the record, may properly be covered by a determination of the sufficiency of the evidence, and of the refusal of the trial court to allow full reimbursement under the occupying claimant's act.

The trial court heard the witnesses, and visited the premises which are level with a southerly slope, and made an inspection of at least part thereof, and from the situation as indicated by the evidence, the entire terrain was then and there open to view.

Under the circumstances here presented, the controlling principle is, viz.: "While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying." *Johnson v. Erickson,* 110 Neb. 511, 194 N. W. 670. See, also, *Gentry v. Burge,* 129 Neb. 493, 261 N. W. 854; *Higgins v. Adelson,* 131 Neb. 820, 270 N. W. 502.

While the evidence in this case is conflicting as to the manner in which the improvement was made, it is clearly established that by 1916 the division fence was actually built where it now remains, along and north of an irrigation lateral constructed by defendant Thomas. Just north of and along this ditch division fence trees were planted in 1909 by Otto Ohme. This line of trees was originally three feet from the division fence, and was planted from the east terminus of the lateral the full length of the dike. These trees were approximately four feet in diameter at the time of trial. All of the farm lands lying north of this fence had been continuously and without interruption farmed up to the fence by the Ohmes and their tenants since before 1916, as owners thereof, and where the farm buildings and improvements were situated the land was also continuously used for that purpose by the Ohmes for the same period of time. No other person used it for farming purposes during that time. There was, according to the weight of the evidence, no substantial interruption of this possession which was under claim of ownership on part of the Ohmes, asserted and maintained for more than 16 years prior to 1934, and likewise continuously since that time to date of trial. In the fall of 1934, while plaintiff and her husband were temporarily absent in California, the defendants entered the disputed strip of land and sunk a well north of the lateral and within this strip of land in suit. Ohme never learned of this incursion until in September, 1934. And the evidence in the record is to the effect that neither Frank Thomas nor Everett Thomas, nor any one representing them, ever used the land north of the division fence until they put down this well in 1934, in the absence of Mrs. Ohme and her husband.

The facts disclosed by the record bring this case within the well-established rule in this state that, where a fence is constructed as a boundary fence between two pieces of property, and where the parties claim ownership to the fence for the full ten-year statutory period, and are not interrupted in their possession or control during such

time, they will, by adverse possession, gain title to such land as may have been improperly inclosed with their own. *Carnahan v. Cummings,* 105 Neb. 337, 180 N. W. 558; *Pfeifer v. Scottsbluff Mortgage & Loan Co.,* 105 Neb. 621, 181 N. W. 533; *Krumm v. Pillard,* 104 Neb. 335, 177 N. W. 171; *Zweiner v. Vest,* 96 Neb. 399, 147 N. W. 1129; *Andrews v. Hastings,* 85 Neb. 548, 123 N. W. 1035; *Sittler v. Wittstruck,* 122 Neb. 452, 240 N. W. 562.

In this connection, possession may be adverse without any declaration of hostility against the true owner. *City of Florence v. White,* 50 Neb. 516, 70 N. W. 50.

And, again, the occupant's intention at the time he took possession is not necessarily a controlling factor. It is sufficient if possession is taken and the premises held actually, openly, notoriously, adversely, and exclusively for ten years under a claim of ownership. *Fitzgerald v. Brewster,* 31 Neb. 51, 47 N. W. 475; *Erickson v. Crosby,* 100 Neb. 372, 160 N. W. 94.

The trial court denied relief to Frank Thomas for expenditures for the construction of the well on the disputed strip of land in 1934, for the reason that he "does not come under the occupying claimant's act." The evidence clearly discloses that defendants entered upon this land in the character of incursionists, and constructed the well while the plaintiff, the then owner of the land, was away from home, six years after plaintiff's rights as owner thereof by virtue of ten years notorious, open, continuous, adverse, and exclusive possession had fully accrued, and at a time when circumstances prevented the present protection of her rights so acquired. Thus, necessary good faith lacking, it appears that the defendants do not come within the scope of the occupying claimants act. 31 C. J. 320; *Davidson v. McDonald,* 131 La. 1047, 60 So. 679; *Wright v. Johnson,* 108 Va. 855, 62 S. E. 948; *Titus v. Poland Coal Co.,* 275 Pa. St. 431, 119 Atl. 540; *Carter v. Brown,* 35 Neb. 670, 53 N. W. 580.

As to defendants' claim for taxes paid, a careful consideration of the evidence discloses that this claim is not

established thereby in excess of the amount allowed by the trial court.

Therefore, it follows that the judgment of the trial court is right, and it is